UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| L. OLIVIA BROWN *et al.*, | ) |
| | ) |
| **Plaintiffs,** | ) |
| | ) |
| v. | ) Civ. Action No. 10-2217 (ABJ) |
| | ) |
| ERICA FOGLE *et al.*, | ) |
| | ) |
| **Defendants.** | ) |
| | ) |

**MEMORANDUM OPINION**

Plaintiff L. Olivia Brown, proceeding *pro se*, sues on behalf of herself and her four minor children under 42 U.S.C. § 1983 and District of Columbia tort law. She alleges that defendants conducted an unconstitutional search of her home in violation of the Fourth Amendment to the United States Constitution. In addition, plaintiff sues defendants for assault and intentional infliction of emotional distress ("IIED"). Plaintiff names as defendants Director Roque Gerald of the District of Columbia's Department of Child and Family Services Agency ("CFSA") and two CFSA social workers, as well as Chief Cathy Lanier of the Metropolitan Police Department ("MPD") and five MPD officers. *See* Compl. Caption.

Defendants move to dismiss the complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure on the grounds of failure to state a claim and qualified immunity. Upon consideration of the parties' submissions, the court will grant defendants' motion to dismiss the

claims against Director Gerald and Chief Lanier in their individual and official capacities and will deny without prejudice defendants' motion to dismiss on the ground of qualified immunity.[1]

## I. BACKGROUND

Plaintiff's Version of Events

Plaintiff alleges that on March 29, 2010, two CFSA social workers, defendants Lateefa Salaam and Erica Fogle, and three MPD officers, defendants Tyrone Wallace, Stephen Haynes, and Michael Pulliam, came to her residence in the southeast quadrant of the District of Columbia "in response to an anonymous complaint concerning the children['s] supervision." Compl. ¶ 10. Plaintiff alleges that "[o]n this occassion [sic][,] six [MPD] [o]fficers demanded entry into [her] residence . . . ." *Id*. ¶ 11. She further alleges that "on a previous occasion," she had "notified" Salaam that a search warrant was "necessary to come into the Plaintiff's residence." *Id*. ¶ 12. Thus, when defendants failed to produce a search warrant on March 29, 2010, plaintiff and her children "exit[ed] their home through the rear door and preceeded [sic] to walk from their home, when they were stopped by [MPD officers], identified by the social workers[,] and coerced against their will while under duress to go back into the residence." *Id*.

Plaintiff alleges that defendants, without her consent, then "combed through the residence, questioning about living quarters, toilet paper, clean clothes, and food in the refrigerator." *Id*. ¶ 13. Defendants allegedly "confirmed that although [they] did not have a warrant, their agency policy compelled them to obtain entry and perform an inspection, regardless of the true merits of the complaint." *Id*. ¶ 14. Defendants allegedly "recommended

---

[1] The court will defer consideration of the D.C. claims of assault and IIED pending its resolution of the qualified immunity defense.

certain precautions or improvements," but found "no conditions which posed any imminent hazard to [plaintiff's] children." *Id*. ¶ 15.

Defendants' Version of Events

Defendants begin the factual recitation a year earlier. They state that on May 24, 2009, after having admitted that she had left her minor children unsupervised, plaintiff agreed to accept "in-home services" from CFSA. Mem. of P. & A. in Support of Defs.' Mot. to Dismiss the Compl. ("Defs.' Mem.") [Dkt. # 9], Ex. B. According to defendants, Salaam was assigned in July 2009 to investigate allegations that plaintiff was leaving her four minor children unsupervised. Defs. Mem. at 4. To complete the investigation, Salaam allegedly attempted "for several months" to meet with plaintiff's children and to conduct a home visit. *Id*. Allegedly, Salaam was unable to complete the investigation because "on every visit either no one answered [plaintiff's] door or [plaintiff] pretended to be someone else." *Id*. Salaam "eventually tracked [plaintiff] down at the children's school" and plaintiff agreed to a home visit. On the scheduled date for the visit, however, plaintiff allegedly requested to reschedule the visit. *Id*.

In March 2010, CFSA "received another anonymous phone call concerning the negligent supervision of the children and also possible substance abuse at plaintiffs' residence." *Id*. Fogle was assigned to investigate that claim. *Id*. When Fogle and Salaam arrived at plaintiff's house on March 29, 2010, "[n]o one answered as they knocked." *Id*. at 5. Eventually, they were joined by MPD patrol officers Haynes and Wallace, who "went around the house and saw [plaintiff] and her four children hurrying down the alley." *Id*. Allegedly, the officers asked plaintiff to stop, Fogle and Salaam explained their purpose and requested to enter the house, plaintiff relented, "opened the front door for the social workers and officers to enter[,]" and "took the

3

CFSA workers on a tour of the house . . . ." *Id*. The social workers interviewed plaintiff and the children. The MPD officers "stayed in the front of the house." *Id*.

Plaintiff filed this civil action on December 21, 2010. In addition to the § 1983 cause of action, she claims assault, Compl. ¶ 24, and IIED, *id*. ¶ 26. Plaintiff seeks declaratory relief and monetary damages exceeding $13 million. *See id*. at 7.

## II. DISCUSSION

### 1. Legal Standard

With regard to the federal claim, defendants argue that the complaint should be dismissed under Rule 12(b)(6) because: (1) plaintiff has not alleged "a prima facie 42 U.S.C. § 1983 action against the District of Columbia," CFSA Director Gerald or MPD Chief Lanier, and (2) the District employees sued in their individual capacities are entitled to qualified immunity. Defs.' Mem. at 3-4.

"To survive a [Rule 12(b)((6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face . . . . A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, --- U.S. ----, 129 S.Ct. 1937, 1949 (2009) (internal quotation marks and citations omitted); *see Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . .") (citations omitted).

In considering a motion to dismiss for failure to state a claim, a court generally "must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), and "grant plaintiff[] the benefit of all inferences that can be derived from the facts alleged." *Kowal v. MCI Communications Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994).

However, the court need not accept a plaintiff's legal conclusions or the inferences she draws if those inferences are unsupported by the alleged facts. *Id*. "Nor must the court accept legal conclusions cast as factual allegations." *Id*.; *see Warren v. District of Columbia*, 353 F.3d 36, 39-40 (D.C. Cir. 2004) (differentiating unacceptable conclusions of law from acceptable conclusions of fact). And while "[a] pro se complaint . . . must be held to less stringent standards than formal pleadings drafted by lawyers . . . even a pro se complaint must plead factual matter that permits the court to infer more than the mere possibility of misconduct." *Atherton v. District of Columbia Off. of Mayor*, 567 F.3d 672, 681-82 (D.C. Cir. 2009) (internal quotations marks and citations omitted).

In ruling on a Rule 12(b)(6) motion to dismiss, the court "may consider only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint[,] and matters of which . . . judicial notice" may be taken. *EEOC v. St. Francis Xavier Parochial School*, 117 F.3d 621, 624 (D.C. Cir. 1997). In construing *pro se* filings liberally, and absent any indication of prejudice to the defendant, the court should read "all of the plaintiff's filings together[.]" *Richardson v. U.S.*, 193 F.3d 545, 548 (D.C. Cir. 1999).

   **2.   Analysis**

Section 1983 creates a private cause of action against a "person" who violates an individual's constitutional rights while acting "under color of any statute, ordinance, regulation, custom, or usage, of any State . . . or the District of Columbia . . . ." 42 U.S.C. § 1983. Such claims are cognizable against the individual only in his or her personal capacity. *See Simpkins v. District of Columbia Gov't*, 108 F.3d 366, 369 (D.C. Cir. 1997). Liability may not rest on a theory of either vicarious liability or respondeat superior. *See Iqbal*, 129 S.Ct. at 1948; *Graham*

*v. Davis*, 880 F.2d 1414, 1421 (D.C. Cir. 1989) (citation omitted); *Lewis v. Gov't of District of Columbia*, 643 F. Supp. 2d 119, 122 (D.D.C. 2009).

Plaintiff claims that defendants violated her right under the Fourth Amendment to be free from "unreasonable searches and seizures . . . ." U.S. Const. amend. IV.  Unreasonableness is determined by the facts and circumstances of the particular case. *United States v. Proctor*, 489 F.3d 1348, 1352 (D.C. Cir. 2007) (citations omitted).

### A.  The Claims Against Gerald and Lanier

The court agrees that plaintiff has not stated any facts establishing Director Gerald's and Chief Lanier's personal involvement in the alleged wrongdoing.  *See* Defs.' Mem. at 11. To the extent that plaintiff is suing those defendants in their individual capacity, she has failed to state a claim for relief under § 1983.  Therefore, the court will grant the motion to dismiss the federal claim against defendants Gerald and Lanier. *See Iqbal*, 129 S.Ct. at 1948 ("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."); *Cameron v. Thornburgh*, 983 F.2d 253, 257-58 (D.C. Cir. 1993) (dismissing claims against high-level policymakers "[i]n the absence of any allegations specifying [their] involvement").

Plaintiff also alleges that CFSA, MPD, and "Defendant Roque" Gerald "failed to promulgate polices [sic], plans and procedures designed to protect the civil rights of families accused of child abuse . . ." and that such failure apparently resulted in "authorized and approved [] conduct which manifests a deliberate indifference to the constitutional rights of families accused of child abuse or neglect." Compl. ¶ 23.  Plaintiff has not named CFSA, MPD or the District of Columbia as defendants; however, a lawsuit against the named defendants in their official capacity is in effect against the District of Columbia. *See Kentucky v. Graham*, 473 U.S.

159, 166 (1985). Under § 1983, the District of Columbia may be "[held] liable not under principles of respondeat superior, but only for constitutional torts arising from 'action pursuant to official municipal policy.' " *Atherton*, 567 F.3d at 691 (quoting *Triplett v. District of Columbia*, 108 F.3d 1450, 1453 (D.C. Cir. 1997)). "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick v. Thompson*, --- U.S. ---, 131 S.Ct. 1350, 1359 (2011).

Plaintiff's sweeping allegation of omission fails to identify a policy, practice or custom undergirding the wrongdoers' unconstitutional behavior. Therefore, the court will grant defendants' motion to dismiss plaintiff's § 1983 claim to the extent that it is brought against the District of Columbia and the individual defendants in their official capacity. *See id.* ("Plaintiffs who seek to impose liability on local governments under § 1983 must prove that 'action pursuant to official municipal policy' caused their injury.") (citations omitted).

### B. Qualified Immunity

Defendants argue that to the extent they are being sued in their individual capacity, they are entitled to qualified immunity. *See* Defs.' Mem. at 11-13. Qualified immunity is "a defense that shields officials from suit if their conduct 'd[id] not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Bame v. Dillard*, 637 F.3d 380, 384 (D.C. Cir. 2011) (quoting *Ortiz v. Jordan*, — U.S. —, 131 S.Ct. 884, 888 (2011)) (other citation omitted). An official enjoys protection from a lawsuit "where [his or her] conduct is objectively reasonable in light of existing law." *Farmer v. Moritsugu*, 163 F.3d 610, 613 (D.C. Cir. 1998). Conversely, an official is not shielded where he "could be expected to know that certain conduct would violate statutory or constitutional rights." *Id*. Because the qualified

immunity doctrine is intended to "ensure that insubstantial claims against government officials [will] be resolved prior to discovery," the Supreme Court has "stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Pearson v. Callahan*, 555 U.S. 223, 231-32 (2009).

Whether an official has qualified immunity is resolved by a two-step inquiry. The threshold question is whether, "[t]aken in the light most favorable to the party asserting the injury, . . . the facts alleged show the officer's conduct violated a constitutional right[.]" *Saucier v. Katz*, 533 U.S. 194, 201 (2001) (citing *Siegert v. Gilley*, 500 U.S. 226, 232 (1991)). "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Id*. If the plaintiff's rights were violated, the court must then assess whether, "in light of the specific context of the case," the right in question was "clearly established." *Id*. The suggested sequence "should not be regarded as an inflexible requirement," *Pearson*, 555 U.S. at 227, and it is not mandatory. *Id*. at 236. "[C]ourts . . . [are] permitted to exercise . . . discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id*.; *see Bame*, 637 F.3d at 384 (deciding that "the principle of constitutional avoidance counsels that we turn directly to the second question" concerning qualified immunity) (quoting *Pearson*); *Atherton*, 567 F.3d at 690 ("the District Court retains the discretion to decide 'which of the two prongs of the qualified immunity analysis should be addressed first . . . .'") (quoting *Pearson*).

Defendants argue that "[g]iven the seriousness of the allegations, the[ir] intrusion was reasonable . . . .," Defs' Mem. at 13, but they have not proffered any evidence to support this conclusion, and their unsworn narrative of the underlying events, *see id*. at 4-5, cannot be

considered as evidence. *See Conservation Force v. Salazar*, 715 F. Supp. 2d 99, 106, n.9 (D.D.C. 2010) (noting that "mere arguments of counsel" and "legal memoranda and oral argument are not evidence . . . .") (internal citations, quotations, and alterations omitted). Furthermore, plaintiff's response to the pending motion raises questions about the reasonableness of defendants' conduct that cannot be resolved on the current record. *See Pearson*, 555 U.S. at 238-9 (observing that "[w]hen qualified immunity is asserted at the pleading stage, the precise factual basis for the plaintiff's claim or claims may be hard to identify.") (citations omitted).

CFSA policy requires the initiation of an investigation "of accepted reports of alleged child maltreatment . . . by establishing face-to-face contact with the alleged child victim within 24 hours of the receipt of the report." Defs.' Mem., Ex. D (Investigations Policy at 1). The policy requires that the investigation include "an assessment of the safety and risk to not only the alleged child victim, but also [to] all children residing in the home [and] [w]hen necessary services and referrals shall be provided to the family." *Id*.

Plaintiff does not dispute that after admitting that she had left her minor children unsupervised, she agreed on May 24, 2009, to accept "in-home services" from CFSA. *See* Defs.' Mem. at 4, n.2 and Ex. B (CFSA Information Exchange).[2] Furthermore, plaintiff admits that the individual defendants were responding to "an anonymous complaint concerning the children['s] supervision," Compl. ¶ 10. But she raises a genuine issue as to whether the CFSA defendants exceeded their statutory duty in investigating the complaint and whether the MPD defendants acted unreasonably during the home visit. In her response to the instant motion to dismiss,

---

[2] Defendants suggest that plaintiff was under CFSA's supervision and, thus, impliedly consented to the home visit in March 2010. *See* Defs.' Mem. at 12. But the record is devoid of any *evidence* establishing an actual relationship between CFSA and plaintiff prior to the home visit on March 29, 2010, which is also the date plaintiff signed the Safety Contract with CFSA, agreeing to meet with Salaam on April 1, 2010, "to begin receiving services to address her needs." Defs.' Mem, Ex. C.

plaintiff maintains that she did not consent to defendants' warrantless entry into and search of her home. Pl.'s Response to Defs.' Mot. to Dismiss the Compl. [Dkt. # 12] at 5. She asserts further that there were no "exigent circumstances to warrant [defendants'] behavior" and that "[a]t the conclusion of this home invasion, by the social workers and the police, there were six police officers combing through all three floors of our home." *Id*. Finally, plaintiff asserts that her minor children "were kidnapped to the basement of our residence and 'grilled' by the social workers without adult plaintiff's presence or consent." *Id*.

Defendants have not proffered any evidence contradicting plaintiff's account, so there is no factual basis upon which the Court can assess the applicability of the qualified immunity defense. Accepting the truth of plaintiff's allegations, as it must on a motion to dismiss, the court cannot find as a matter of law that plaintiff cannot state a plausible Fourth Amendment claim. *See Good v. Dauphin County Social Services for Children and Youth*, 891 F.2d 1087, 1092 (3d. Cir. 1989) ("The decided case law made it clear [in April 1987] that the state may not, consistent with the [Fourth Amendment's] prohibition of unreasonable searches and seizures . . . conduct a search of a home . . . in the absence of consent, a valid search warrant, or exigent circumstances."); *see id*. 1092-93 (examining Supreme Court precedent); *Schneckloth v. Bustamonte*, 412 U.S 218, 233 (1973) ("[I]f under all the circumstances it has appeared that the consent was not given voluntarily—that it was coerced by threats or force, or granted only in submission to a claim of lawful authority—then we have found the consent invalid and the search unreasonable.") (citations omitted).

On the other hand, plaintiff's statement that exigent circumstances were not present is a conclusion, not a fact. Therefore, the court will deny defendants' Rule 12(b)(6) motion to dismiss on the ground of qualified immunity without prejudice to their filing a properly

supported motion for summary judgment under Rule 56, to which plaintiff will be permitted to respond.

## CONCLUSION

For the foregoing reasons, the court grants defendants' motion to dismiss the federal claim, brought under 42 U.S.C. § 1983, against Roque Gerald and Cathy Lanier in their individual capacity, and against all defendants in their official capacity.  As to the federal claim against the remaining defendants in their individual capacity, the court denies without prejudice defendants' motion to dismiss on the ground of qualified immunity.  Finally, the court defers consideration of plaintiff's tort claims pending resolution of the qualified immunity defense.  A separate order accompanies this Memorandum Opinion.

_____s/_____
AMY BERMAN JACKSON
United States District Judge

DATE:  October 18, 2011