UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| L. OLIVIA BROWN *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Civ. Action No. 10-2217 (ABJ) |
| | ) |
| ERICA FOGLE *et al.*, | ) |
| | ) |
| Defendants. | ) |
| | ) |

**MEMORANDUM OPINION**

Plaintiff L. Olivia Brown, proceeding *pro se*, sues on behalf of herself and her four minor children under 42 U.S.C. § 1983 and under common law for assault and intentional infliction of emotional distress ("IIED"). She alleges that in March 2010, defendants conducted a warrantless search of her home in violation of the Fourth Amendment to the United States Constitution and during the course of the search subjected her and her children to an assault and emotional distress. Plaintiff names as defendants Director Roque Gerald of the District of Columbia's Department of Child and Family Services Agency ("CFSA") and two CFSA social workers, as well as Chief Cathy Lanier of the Metropolitan Police Department ("MPD") and three MPD officers. *See* Compl. Caption.

By Order of October 18, 2011, the court dismissed the complaint against Director Gerald and Chief Lanier and denied without prejudice the remaining defendants' motion to dismiss on the ground of qualified immunity. *See Brown v. Fogle*, 819 F. Supp. 2d 23 (D.D.C. 2011). Those defendants now move pursuant to Rule 56 of the Federal Rules of Civil Procedure for summary judgment on the constitutional claim based on qualified immunity [Dkt. # 17], which plaintiff has opposed [Dkt. # 19]. Upon consideration of the parties' submissions and the entire record, the court will grant defendants' motion for summary judgment on the Fourth Amendment

1

claim. In addition, the court finds from defendants' unmatched evidence that plaintiff cannot prove her claims of assault and IIED and, therefore, will enter judgment for defendants on all claims.

## BACKGROUND

The relevant facts are as follows. Defendants Stephen Haynes, Tyrone Wallace, and Michael Pulliam are MPD police officers and Defendants Erica Fogle and Lateefa Salaam were CFSA social workers at the time of the search of plaintiff's home on March 29, 2010. Defs.' Statement of Material Facts as to Which There is No Genuine Issue ¶¶ 1-5. On that day, Fogle and Salaam responded "to an anonymous call reporting possible child endangerment [by] check[ing] on the safety of [plaintiff's] children" at her residence in the southeast quadrant of the District of Columbia. Mem. of P. & A. in Supp. of Defs' Mot. for Summ. J. on Pl.'s Constitutional Claims ("Defs.' Mem."), Ex. A-2 (Decl. of Erica Fogle ¶ 4). "Haynes and Wallace, while on routine neighborhood patrol, stopped to assist [them] on this routine, in-home child safety assessment at the Brown residence." *Id.* ¶ 5; *but see* Ex. A-1 (Decl. of Stephen Haynes ¶ 4) and Ex. A-4 (Decl. of Tyrone Wallace ¶ 4) (each stating that he "was summoned by" Fogle and Salaam to assist); Ex. A-3 (Decl. of Michael Pulliam ¶¶ 3-4) (stating that as a supervising officer, he "was summoned by Officers Wallace and Haines [sic] to respond to [plaintiff's residence] due to the unusual way a call to assist CFSA Defendants [] Fogle and [] Salaam . . . was unfolding").

Salaam knocked on the front door of the residence and then with Fogle went "to the rear entrance of the home to knock on the rear door," where they encountered plaintiff. Fogle Decl. ¶¶ 6-7. Wallace states that he "was present when Fogle and Salaam knocked on Brown's front door[,]" and further states that he "saw Brown running down the alley, and [] asked [her] why is she running. I then asked the plaintiff if child and family could come into the home and check

on the kids or words to that effect." Wallace Decl. ¶¶ 5-6. What happened next is in dispute but only defendants have provided statements under penalty of perjury.

According to Fogle, she and Salaam told plaintiff why they were there and asked her if they could enter the home, "check on the kids and discuss the report received at the CFSA hotline, or words to that effect." Fogle Decl. ¶ 7. "[Plaintiff] gave us her consent and voluntarily let Salaam, MPD officers and me into her house." *Id*. ¶ 9.

> MPD Officers remained in the front room near the front door, while Salaam and I checked on the children's safety. [Plaintiff] led Salaam and me on a tour of the home, answering basic questions and volunteering information to us about provisions and care for the children. I asked [plaintiff] where I could conduct private interviews with her children as part of routine CFSA policy on home visits, and [plaintiff] guided me to the children's playroom and said I could speak to them there. After obtaining prior consent from [plaintiff], I conducted routine private interviews with each of the children.

*Id*. ¶¶ 10-13. The MPD defendants' declarations corroborate Fogle's version of the respective events each had witnessed. *See* Haynes Decl. ¶¶ 6, 8-9; Wallace Decl. ¶¶ 8-9; Pulliam Decl. ¶ 9. The MPD defendants deny leaving the front room during the social workers' visit with plaintiff and the children, deny threatening plaintiff or using force to enter her home, deny interrogating plaintiff or her children, and deny searching plaintiff's home or seizing her property. Fogle corroborates those defendants' denials. Fogle Decl. ¶¶ 14-17. In addition, the MPD officers and Fogle state that they had a good faith belief that their actions "were at all times reasonable, appropriate and consistent with local and federal law." Haynes Decl. ¶¶ 9-14; Wallace Decl. ¶¶ 9-14; Pulliam Decl. ¶¶ 9-14; Fogle Decl. ¶ 18.

In an unsworn statement, plaintiff counters (1) that "[a]t no time did [she] consent to this action [to enter her home]," Pl.'s Opp'n to Defs.' Mot. for Summ. J. on Pl.'s Constitutional Claims/Immunity at 2 ("Pl.'s Opp'n"); (2) that "at no time was anyone running [down the alley]", *id*. at 2-3; and (3) that "[t]here were no items seized, however, rooms were entered on other floors, dresser drawers were opened, beds were examined and refrigerator and cabinets

3

were opened and contents examined. This constitutes search." *Id*. at 4.  In addition, plaintiff states that "[d]efendants kidnapped and interrogated Plaintiffs for a period of about two hours. At no time was permission given for this incident[,]" and that she was "coerced, while under duress with the threat of kidnapping to jail." *Id*.

## DISCUSSION

### 1. Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A dispute is "genuine" only if a reasonable fact-finder could find for the nonmoving party; a fact is only "material" if it is capable of affecting the outcome of the litigation. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).  *See also Laningham v. U.S. Navy*, 813 F.2d 1236 (D.C. Cir. 1987). In assessing a party's motion, "[a]ll underlying facts and inferences are analyzed in the light most favorable to the nonmoving party." *N.S. ex rel. Stein v. District of Columbia*, 709 F. Supp. 2d 57, 65 (D.D.C. 2010) (citing *Anderson*, 477 U.S. at 247).

"To defeat summary judgment, the non-moving party must 'designate specific facts showing there is a genuine issue for trial.'" *Van Hollen v. Fed. Election Comm'n*, No. 11-0766 (ABJ), --- F. Supp. 2d ---, 2012 WL 1066717, at *6 (D.D.C. Mar. 30, 2012) (quoting *Celotex Corp. v.. Catrett*, 477 U.S. 317, 324 (1986)).  As the court advised plaintiff with regard to responding to defendants' summary judgment motion, "any factual assertion in the movant's affidavits will be accepted as being true unless [the opposing party] submits his own affidavits or other documentary evidence contradicting the assertion." Order (Dec. 21, 2011) at 1 (quoting *Neal v. Kelly*, 963 F. 2d 453, 465 (D.C. Cir. 1992) (quoting *Lewis v. Faulkner*, 689 F. 2d 100, 102 (7th Cir. 1982)). Thus, to defeat defendants' properly supported summary judgment motion, plaintiff would need to rebut defendants' affidavits with evidence, such as other affidavits or

sworn statements; mere statements that the moving party's affidavits are inaccurate or incorrect are not sufficient. *Id*. at 2 (citing *Neal*, 963 F. 2d at 457-58).

A party opposing summary judgment "may not rest upon the mere allegations or denials of [the complaint]" but must instead present "significant probative evidence tending to support the complaint" in order to move the case beyond summary judgment to trial. *Anderson*, 477 U.S. at 248-49 (citations and internal quotation marks omitted); s*ee Johnson v. Wash. Metro. Area Transit Auth'y*, 883 F.2d 125, 128 (D.C. Cir. 1989), *abrogated on other grounds by Belton v. Wash. Metro. Area Transit Auth'y*, 20 F.3d 1197, 1200 (D.C. Cir. 1994) ("The removal of a factual question from the jury is most likely when a plaintiff's claim is supported solely by the plaintiff's own self-serving testimony, unsupported by corroborating evidence, and undermined either by other credible evidence, physical impossibility or other persuasive evidence that the plaintiff has deliberately committed perjury.") (citations omitted).

   2. **Analysis**

   A. **Qualified Immunity**

The applicable law stated in the court's earlier ruling, *see Brown*, 819 F. Supp. 2d at 28-29, bears repeating. Qualified immunity is "a defense that shields officials from suit if their conduct 'd[id] not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Bame v. Dillard*, 637 F.3d 380, 384 (D.C. Cir. 2011) (quoting *Ortiz v. Jordan*, — U.S. —, 131 S.Ct. 884, 888 (2011)) (other citation omitted). An official enjoys protection from a lawsuit "where [his or her] conduct is objectively reasonable in light of existing law." *Farmer v. Moritsugu*, 163 F.3d 610, 613 (D.C. Cir. 1998). Conversely, an official is not shielded where he "could be expected to know that certain conduct would violate statutory or constitutional rights." *Id*.

Whether an official has qualified immunity is resolved by a two-step inquiry. The threshold question is whether, "[t]aken in the light most favorable to the party asserting the

5

injury, . . . the facts alleged show the officer's conduct violated a constitutional right[.]" *Saucier v. Katz*, 533 U.S. 194, 201 (2001) (citing *Siegert v. Gilley*, 500 U.S. 226, 232 (1991)). "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Id*. If the plaintiff's rights were violated, the court must then assess whether, "in light of the specific context of the case," the right in question was "clearly established." *Id*. The suggested sequence "should not be regarded as an inflexible requirement," *Pearson v. Callahan*, 555 U.S. 223, 227 (2009), and it is not mandatory. *Id*. at 236. "[C]ourts . . . [are] permitted to exercise . . . discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id*.; *see Bame*, 637 F.3d at 384 (deciding that "the principle of constitutional avoidance counsels that we turn directly to the second question" concerning qualified immunity) (quoting *Pearson*); *Atherton*, 567 F.3d at 690 ("the District Court retains the discretion to decide 'which of the two prongs of the qualified immunity analysis should be addressed first . . . .' ") (quoting *Pearson*).

Defendants had argued that "[g]iven the seriousness of the allegations, the[ir] intrusion was reasonable . . . ." *Brown*, 819 F. Supp. 2d at 29 (quoting Defs.' Mem. at 13), but they had not "proffered any evidence to support this conclusion." *Id*. Defendants have now supplied declarations and documents to support summary judgment, which plaintiff has not rebutted with any admissible evidence. Plaintiff does not dispute defendants' business record showing that Salaam was assigned "to monitor" plaintiff and her children on July 16, 2009, eight months before the home visit underlying this action. Defs.' Ex. A-5 (Salaam Letter of Nov. 13, 2009). And she admits that defendants were at her home in response to an anonymous complaint raising concerns about the supervision of her children and that she had left her minor children unsupervised in May 2009. *Brown*, 819 F. Supp. 2d at 29-30.

CFSA policy requires the initiation of an investigation "of accepted reports of alleged child maltreatment . . . by establishing face-to-face contact with the alleged child victim within 24 hours of the receipt of the report." *Id*. at 29 (quoting Defs.' Mem., Ex. D (Investigations Policy at 1)). Furthermore, the policy requires that the investigation include "an assessment of the safety and risk to not only the alleged child victim, but also [to] all children residing in the home [and] [w]hen necessary services and referrals shall be provided to the family." *Id*. Plaintiff implicitly admits that defendants followed those procedures while characterizing their conduct as "kidnapping," "interrogat[ion]," and a "search." Pl.'s Opp'n at 4; *see Brown*, 819 F. Supp. 2d at 30 ("[P]laintiff asserts that her minor children 'were kidnapped in the basement . . . and grilled by the social workers without adult plaintiff's presence or consent.'") (citation omitted). Such "hyperbole . . . [and] [n]aked accusations are no substitute for evidence and [cannot] defeat summary judgment." *Hall v. Nix*, 147 Fed. Appx. 954, 955 (11th Cir. 2005) (per curiam) (citation omitted).

When presented with the material facts, namely, (1) that plaintiff had been under CFSA's supervision since July 2009; (2) that plaintiff admittedly left her minor children unsupervised in May 2009; (3) that on the day in question, defendants were responding to an anonymous tip of possible child endangerment in accordance with CFSA policy; and (4) that upon defendants' arrival, plaintiff admittedly left the home with her children "through the rear door", Compl. ¶ 12; Wallace Decl. ¶ 6, and with defendants' testimony, no reasonable jury could find that defendants' conduct was objectively unreasonable and, thus, in violation of the Fourth Amendment's proscription against "unreasonable searches."[1] U.S. Const. amend. IV. Therefore,

---

[1] In her opposition, plaintiff points out "conflicting testimony" about how the MPD defendants became involved in the incident. *See* Pl.'s Opp'n, at 2-3. Whether the officers stopped to provide assistance, as Fogle stated, or were "summoned," as they stated, is immaterial to resolving the qualified immunity issue.

the court finds that defendants, having shown that they did not violate plaintiff's constitutional right, are entitled to qualified immunity on the § 1983 claim.[2]

### B.  The Common Law Claims

Since plaintiff has proffered no probative evidence to contradict defendants' declarations describing a scene starkly different from the one she describes in unsworn statements, the court finds an insufficient factual basis to support plaintiff's conclusory claims of assault and IIED. *See* Compl. ¶¶ 24, 26.  It therefore will enter judgment for defendants on plaintiff's common claims as well.

### CONCLUSION

For the foregoing reasons, the court concludes from the evidentiary record that defendants are entitled to qualified immunity on the federal claim and that no reasonable jury could find for plaintiff on the common law claims.  Hence, the court will enter judgment for defendants on all claims.  A separate order accompanies this Memorandum Opinion.

_____s/_____
AMY BERMAN JACKSON
United States District Judge

DATE:  May 17, 2012

---

[2] Even if a Fourth Amendment violation were found, no reasonable jury could find on the facts of this case that defendants knew or should have known that they were violating a clearly established right by following CFSA's policy on investigating complaints of child endangerment.